UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WELLS FARGO BANK, N.A., not in its
individual capacity but solely as trustee for
RMAC REMIC Trust, Series 2009-9,

                                  Plaintiff,

          -v-

FARRIN ULLAH a/k/a Farrin B. Ullah; ASSET     13-CV-485 (JPO)
ACCEPTANCE LLC; INTERNAL REVENUE
SERVICE; BOARD OF MANAGERS OF THE       OPINION AND ORDER
COLUMBIA CONDIMINIUM; JOHN DOES #1-
10, said names being fictitious and unknown to
the plaintiff, the persons or parties unknown to the
plaintiff, the persons or parties being the tenants,
occupants, persons, corporations, if any, having or
claiming an interest in or lien upon the premises
described in the complaint,

                                Defendants.
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Wells Fargo Bank, N.A. ("Wells Fargo") brings this action as trustee for RMAC REMIC Trust, Series 2009-9 ("the Trust") seeking to foreclose on a mortgaged real property owned by Defendant Farrin Ullah.[1] On February 6, 2014, this Court dismissed the initial complaint for lack of standing. Wells Fargo subsequently filed an amended complaint. Ullah has moved to dismiss the amended complaint, and Wells Fargo has cross-moved for summary judgment of foreclosure. For the reasons that follow, the motion to dismiss is denied, and summary judgment of foreclosure is granted.

---

[1] This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of Maryland, Defendants are citizens of states other than Maryland, and the amount in controversy exceeds $75,000. (*See* Dkt. No. 4; Dkt. No. 38 ("Am. Compl.") ¶¶ 4-8, 21.)

I.  **Background**

On November 21, 2006, to finance the acquisition of a property located at 275 West 96th Street, Unit 25 E, New York, New York 10025 ("the Property"), Ullah executed and delivered to Castle Point Mortgage, Inc. ("Castle Point") a note in the principal amount of $880,750, plus interest at the rate of 10.990% annually ("the Note"). (Am. Compl. Ex. A.) That same day, Ullah, acting as nominee for Castle Point, executed and delivered a mortgage ("the Mortgage") to Mortgage Electronic Registration Systems, Inc. ("MERS"), in the amount of $880,750. (Am. Compl. Ex. B.) Ullah subsequently defaulted on the Note and Mortgage by failing to make monthly payments due thereunder for August 1, 2008, and for each subsequent month thereafter. (*See* Dkt. No. 58 ("Pl. 56.1 Statement"), ¶ 18.)[2] Wells Fargo asserts—and Ullah disputes—that, through various assignments by various parties, it holds both the Note and Mortgage, and is therefore entitled to foreclose on the Property.

The amended complaint represents Wells Fargo's third attempt to foreclose on the Property. In its first attempt, it took over a state court case that ACT Properties, LLC ("ACT") had initiated against Ullah in 2009, in an attempt to foreclose on the same Property at issue here. In an August 2012 opinion, the state court held that ACT did not have standing to file the foreclosure action. The court reasoned that ACT's alleged predecessor in interest, MERS, never held the Note secured by Ullah's Mortgage, and therefore was incapable of assigning the Note— and with it, the right to foreclose—to ACT. *ACT Props., Inc. v. Ullah*, No. 115258/09 (N.Y. Sup. Ct., N.Y. Cnty. Aug. 16, 2012). The court relied on *Bank of N.Y. v. Silverberg*, 926 N.Y.S.2d 532 (App. Div. 2d Dep't 2011), which held that, as a nominee and mortgagee for the purposes of recording, MERS cannot "assign the right to foreclose upon a mortgage to a plaintiff

---

[2] As explained *infra*, Ullah has failed to respond to Wells Fargo's Rule 56.1 statement of undisputed facts, and therefore the facts contained therein, where they are supported by the record, are deemed admitted. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citing Local Rule 56.1).

in a foreclosure action absent a right to, or possession of, the actual underlying promissory note." *Id.* at 536.

In January 2013, Wells Fargo initiated this action, seeking foreclosure on the contested Property in federal court. (Dkt. No. 1.) This Court dismissed Wells Fargo's complaint for failure to allege standing. *Wells Fargo Bank, N.A. v. Ullah*, No. 13 Civ. 485 (JPO), 2014 WL 470883 (S.D.N.Y. Feb. 6, 2014). The Court held, first, that Wells Fargo was "precluded [by the state court decision] from asserting that MERS validly conveyed Ullah's note and mortgage to ACT" and, second, that "[t]his holding breaks the chain of valid conveyances from MERS to ACT to Wells Fargo." *Id.* at *5. Because "the complaint d[id] not allege any other means by which Wells Fargo came to hold the note and mortgage," the Court dismissed the case. *Id.*

Wells Fargo moved for reconsideration of the Court's decision. (Dkt. No. 33.) It argued that it *had* alleged other means by which it came to hold the Note and Mortgage, namely that "the original Note . . . was endorsed in blank by Castle Point," and that it "was physically transferred to [Wells Fargo] as evidenced by the Allonge to Note from ACT." (Dkt. No. 35 at 8.) The Court rejected this argument because it was based only on assertions in Wells Fargo's briefing papers. (Dkt. No. 36 at 5.) However, the Court granted Wells Fargo leave to amend the complaint, noting that the state court decision does not preclude Wells Fargo from arguing that it has standing, so long as Wells Fargo does so under "different circumstances" than those before the state court. (*Id.*)

Wells Fargo filed an amended complaint on June 20, 2014. (Am. Compl.) The new complaint is almost identical to the last, except that it adds that ACT "physically transferred" the note to Wells Fargo. (*Id.* ¶ 12.) Further, it states that Wells Fargo is "the holder of the Note," that Wells Fargo "has held the subject Note . . . since prior to the commencement of this action," and that Wells Fargo therefore "has standing to bring and maintain this action" and "is entitled to enforce payment of the Note . . . and the Mortgage securing the Note." (*Id.* ¶¶ 14-15.)

3

On December 15, 2014, after several extensions of time to respond to the amended complaint, Ullah, through counsel, filed a motion to dismiss that complaint on various grounds, including that Wells Fargo lacks standing to sue. (*See* Dkt. No. 45.) Ullah simultaneously filed an answer to the amended complaint. The answer includes three affirmative defenses that repeat the arguments made in Ullah's motion to dismiss, as well as a counterclaim. (Dkt. No. 48 ("Answer").) The counterclaim "demands that all interest be tolled on the present mortgage because no party has come forward with valid proof that they can and do possess the note." (*Id.* ¶ 30.) Wells Fargo answered the counterclaim on January 7, 2015. (Dkt. No. 51.) On January 30, 2015, Wells Fargo opposed Ullah's motion to dismiss, and cross-moved for summary judgment. (Dkt. Nos. 52, 56.) Ullah, again through counsel, filed a reply brief in support of her motion to dismiss and in opposition to Wells Fargo's motion for summary judgment on February 28, 2015. (Dkt. No. 58.) Wells Fargo filed its reply on March 6, 2015. (Dkt. No. 59.)

On March 24, 2015, after the two motions had been fully briefed, Ullah filed a letter with the Court in which she demanded that her attorney be "removed." (Dkt. No. 60.) On April 20, Ullah filed an application requesting that the Court seek pro bono counsel to represent her. (Dkt. No. 63.) The Court held a hearing on April 23, at which Ullah initially appeared, but then left, stating that she was suffering from a medical condition.[3] During that hearing and in Ullah's presence, the Court denied Ullah's request that it seek pro bono counsel, and directed the Clerk of Court to amend the docket to reflect that Ullah is proceeding *pro se*. (Dkt. No. 68.) On April 28, the Court scheduled a telephonic conference for May 29. (Dkt. No. 69.) On May 27, the Court cancelled the telephone conference and scheduled an in-court hearing for June 9, 2015. (Dkt. No. 71.) On the morning of the June 9 hearing, new counsel for Ullah filed an appearance

---

[3] On June 10, 2015, the Court received notice on the docket of a formal request by Ullah for a postponement of the April 23 hearing, which request is dated April 22. (Dkt. No. 76.) That request is denied as moot.

on the docket.  (Dkt. No. 75.)  The hearing proceeded that day, at which counsel for Wells Fargo and counsel for Ullah argued various issues related to the present motions.

## II.     Motion to Dismiss

Ullah moves to dismiss the amended complaint on three grounds: first, that Wells Fargo does not have standing to bring this action; second, that the initial complaint was not properly served; and, third, that she never received the 90-day foreclosure notice required under New York state law.  (*See* Dkt. No. 47 ("MTD").)  Ullah raises these three arguments again in her answer, as affirmative defenses.  (Answer ¶¶ 18-30.)  Because the Court determines below that none of these arguments has merit, and that Wells Fargo is entitled to summary judgment, Ullah's motion to dismiss is denied.

## III.    Motion for Summary Judgment

### A.      Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Rule 56).  A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  If the movant meets this initial burden of production, the non-moving party must then identify specific facts demonstrating a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324.  In determining whether there is a genuine dispute as to a material fact, the court views all evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *See*

*Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 427 (2d Cir. 2009). The court's role is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). Rather, "it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Id.* (citing *Anderson*, 477 U.S. at 249).

A party moving for summary judgment in this district must submit a statement of material facts as to which the movant contends "there is no genuine issue to be tried," together with a citation to the admissible evidence supporting each fact. *See* Local Civil Rule 56.1(a), (d). In turn, the nonmovant must submit "a separate, short and concise statement of material facts" setting forth the genuine issues it contends remain to be resolved at trial." Local Civil Rule 56.1(c). If the nonmovant fails to do so, all material facts offered by the movant will be deemed admitted where they are supported by the record. *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); *see also Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) ("[Local Rule 56.1] does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record."). In this action, Wells Fargo submitted a statement of undisputed material facts, as required by the local rule, and Ullah failed to controvert these facts with her own Local Rule 56.1 statement. Accordingly, the facts contained in Wells Fargo's Rule 56.1 statement are deemed admitted where they are supported by the record.

  **B.**  **Discussion**

    **1.**  **Prima Facie Case**

"In a New York mortgage foreclosure action, a plaintiff makes a *prima facie* case—with summary judgment appropriate if nothing else is shown—where the foreclosing party produces documentary evidence establishing the three elements of a foreclosure claim: (1) a mortgage, (2) a note, and (3) proof of default on the note by the mortgagor." *E. Sav. Bank, FSB v. Bright*, No.

11 Civ. 1721 (ENV) (MDG), 2012 WL 2674668, at *3 (E.D.N.Y. July 5, 2012); *see also Regency Sav. Bank, F.S.B. v. Merritt Park Lands Assocs.*, 139 F. Supp. 2d 462, 465 (S.D.N.Y. 2001) ("Under New York law, summary judgment in a mortgage foreclosure action is appropriate where the Note and Mortgage are produced to the Court along with proof that the Mortgagor has failed to make payments due under the Note."); *Fleet Nat. Bank v. Olasov*, 16 A.D.3d 374, 374 (N.Y. App. Div. 2d Dep't 2005) ("The plaintiff . . . established its prima facie entitlement to judgment against the defendants . . . by submitting the mortgage, the unpaid note, and evidence of the mortgagors' default."). "Once the plaintiff has established its prima facie case by presenting the Note, Mortgage and proof of default, the Mortgagee has a presumptive right to foreclose which can only be overcome by an affirmative showing by the Mortgager." *Regency Sav. Bank*, 139 F. Supp. 2d at 465-66 (citing *First Nat'l Bank of Highland v. J. & J. Milano, Inc.*, 160 A.D.2d 670 (N.Y. App. Div. 2d Dep't 1990)). The burden of providing affirmative evidence of a defense generally rests with the defendant, but if the defendant raises the plaintiff's standing as a defense, the plaintiff must establish it before the burden shifts back to the defendant. *E. Sav., FSB v. Thompson*, 57 F. Supp. 3d 198, 203 (E.D.N.Y. 2014).

Wells Fargo has established its *prima facie* entitlement to foreclose on the Property by submitting copies of the Note and Mortgage, executed by Defendant Ullah (Am. Compl. Exs. A & B), and an affidavit from an Assistant Secretary of Wells Fargo's loan servicer who is familiar with the case attesting to Ullah's default, beginning in 2008, on the payments due (Dkt. No. 55 ("Bennett Aff.") ¶¶ 1, 13). *See E. Sav. Bank, FSB v. Ferro*, No. 13 Civ. 5882 (SJF) (GRB), 2015 WL 778345, at *6 (E.D.N.Y. Feb. 24, 2015) (holding that the plaintiff had established a *prima facie* case of mortgage foreclosure under New York law by "submitting copies of the Note and Mortgage" and "an affidavit from one of its Senior Asset Managers with direct knowledge of the facts and circumstances of the case attesting to" the defendant's default).

    **2.    Ullah's Affirmative Defenses**

Ullah does not contest that she has a debt, that the debt is secured by a mortgage, and that she has defaulted on the debt. In fact, she concedes all of these facts: she admits that she acquired a loan from Castle Point in order to purchase the Property, that the loan was secured by a mortgage, and that she has stopped paying the amount due on her mortgage. (*See* Dkt. No. 58 ("Ullah Reply"), Ex. 1 ("Ullah Aff. 2"), at 12-15 (conceding that Ullah "signed the loan . . . with Castle Point Mortgage Company in November 2006," and that she "stopped making the payments" in 2008); Answer ¶ 5 ("Defendant admits that she did execute a Mortgage."); Dkt. No. 46 ("Ullah Aff.") ¶¶ 2, 4 & pp. 6-8.) However, she asserts three affirmative defenses. First, she argues, as she has before, that Wells Fargo does not have standing to bring this action. Second, she contends that she was not properly served with the initial complaint. Finally, she alleges that Wells Fargo failed to comply with New York law requiring that a plaintiff serve a foreclosure notice 90 days before initiating a foreclosure action. (Answer ¶¶ 18-30.)

### a. Standing

As described above, Wells Fargo has failed twice, in the state court action and in the present federal action, to establish that it has standing to foreclose on the Property. It failed in state court because it relied for standing on a written assignment of the Note from MERS to ACT, but MERS was incapable of assigning the Note. It failed initially in this Court because it relied on the same assignment, and was therefore barred by the doctrine of issue preclusion. Now, Wells Fargo provides a new justification for standing: it asserts that it has physical possession of the Note, and that the Note is indorsed in blank. (Am. Compl. ¶¶ 13-15 & Ex. A.)

A few principles guide the Court's analysis of whether, with this new assertion, Wells Fargo has met its burden of establishing that it has standing to bring this action. First, standing is assessed at the time an action is commenced; it is not sufficient that a plaintiff obtain standing after initiating suit. *See U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 753-54 (N.Y. App. Div. 2d Dep't 2009). Second, as relevant here, physical possession of a note is sufficient to establish

standing where there is an "indorsement in blank on the face of the Note." *Caraballo v. Homecomings Financial*, No. 12 Civ. 3127 (JPO), 2014 WL 2117225, at *4 (S.D.N.Y. May 21, 2014). Where there is such an indorsement, "the Note may be transformed into bearer paper, and mere physical possession will imbue the holder of the Note with mortgage-related rights." *Id.* (citing, *inter alia*, *Mortg. Elec. Registration Sys., Inc. v. Coakley*, 41 A.D.3d 674, 674 (N.Y. App. Div. 2d Dep't 2007)); *see also* N.Y. U.C.C. Law § 3-204(2) (McKinney) ("An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone . . . ."). Third, the holder of a note indorsed in blank need not show that it holds the mortgage as well, as the mortgage is "passed as an incident to the . . . note." *Coakley*, 41 A.D.3d at 674; *see also Deutsche Bank Nat. Trust Co. v. Pietranico*, 928 N.Y.S.2d 818, 833 (N.Y. Sup. Ct. 2011) ("One need not be both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced. It is the interest in the note that is controlling . . . ." (internal quotation marks omitted)).

   Applying these principles here, the Court concludes that Wells Fargo has established that it has standing to bring this action. First, Wells Fargo physically possesses the Note secured by Ullah's Mortgage, a copy of which is attached to the amended complaint, and the original of which this Court viewed at the April 22 hearing, and which was again brought to court by Wells Fargo's counsel at the June 9 hearing. (Am. Compl. ¶¶ 12-15 & Ex. A; Pl. 56.1 Statement ¶¶ 3, 12-13.) Second, the Note is indorsed in blank by Castle Point, the original lender. (Am. Compl. Ex. A, at 5; Pl. 56.1 Statement ¶ 4.) Finally, Wells Fargo obtained the Note on November 20, 2009, over three years before this action was initiated on January 22, 2013. (Pl. 56.1 Statement

¶¶ 8, 15; *see also* Dkt. No. 1, Ex. A.) Because Wells Fargo physically possessed the Note, indorsed in blank, when it commenced this suit, it has standing to bring this action.[4]

Ullah makes various arguments in an attempt to raise a triable issue of fact as to Wells Fargo's standing.[5] None of these arguments has merit.

First, Ullah contends that Wells Fargo is barred by the doctrine of issue preclusion from alleging that it has physical possession of the Note because "[t]he state court heard Wells Fargo argue that it had physical possession of the note," and found that "assertion irrelevant to standing in light of the facts presented." (Ullah Reply at 2.) This is incorrect, both as a factual matter and as a legal matter. The state court determined that *ACT*—not Wells Fargo—did not possess the Note at the time it commenced the state action. *See Wells Fargo Bank, N.A. v. Ullah*, No. 115258/09 (N.Y. Sup. Ct., N.Y. Cnty. Aug. 13, 2012). In any event, even had the state court found that Wells Fargo did not possess the Note when the state court action began, such a finding would not preclude Wells Fargo from asserting that it possessed the Note when it initiated *this* action, as the latter question was not decided in the state court action. *See Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152 (2d Cir. 2006) ("Under New York law, a prior decision has preclusive effect as to any issue that . . . both (1) was 'necessarily decided' in the first action, *and* (2) is 'decisive' in the later action." (citing, *inter alia*, *Jeffreys v. Griffin*, 801 N.E.2d 404 (N.Y. 2003))).

Second, Ullah asks: "[H]ow did Wells Fargo ended [sic] up having the original note when ACT was never able to prove [in state court] that they had it?" (Ullah Aff. at 10.) The

---

[4] Ullah's allegation that there are "contradictory versions of the first assignment of mortgage" (MTD at 3; Ullah Aff. at 8-10; Answer ¶ 23), even if true, does not undermine Wells Fargo's standing, as the Mortgage passes as an incident to the Note.

[5] Ullah makes these arguments multiple times, in slightly different forms, first in support of dismissal (*see* MTD), then as affirmative defenses (*see* Answer ¶¶ 18-30), and finally, in opposition to Wells Fargo's motion for summary judgment (*see* Ullah Reply).

Court does not know the answer to the question, but the answer is immaterial to whether Wells Fargo has standing to bring this action. As explained above, for standing purposes, it is sufficient that Wells Fargo had the Note, indorsed in blank, when it commenced this action; Wells Fargo need not explain how it obtained the Note.

Third, Ullah asserts that "[e]ven if [Wells Fargo] claim[s] they now have the possession of the note that does not mean the note had been endorsed at the time the complaint was filed." (Ullah Aff. 2, at 3; *see also* Answer ¶ 19 ("There is no way to tell when the Note was endorsed.").) Wells Fargo does not, however, allege only that it currently possesses the indorsed Note; rather, it asserts in its Rule 56. 1 statement that it possessed that Note when it initiated this action. (Pl. Rule 56.1 Statement ¶ 15 (citing Bennett Aff. ¶ 11).)[6] Ullah does not point to any facts to the contrary; nor could she, as the same Note was included with the initial complaint, and was indorsed in blank. (*See* Dkt. No. 1, Ex. A, at 5.) *Cf. Deutsche Bank Nat. Trust Co. v. Haller*, 100 A.D.3d 680, 682 (N.Y. App. Div. 2d Dep't 2012) (holding that it was "not clear whether the endorsement was effectuated prior to the commencement of th[e] action" where the endorsement "was not included in the copy of the note which was annexed to the plaintiff's complaint").

Fourth, Ullah suggests that Wells Fargo fabricated the blank indorsement on the Note. (Ullah Reply at 2-3; Ullah Aff. 2, at 6-9.) In support of this proposition, Ullah cites a January 28, 2015, opinion by the Honorable Robert D. Drain, a judge in the Bankruptcy Court of the Southern District of New York. (Ullah Reply Ex. 2.) *See In Re Carrsow-Franklin*, 524 B.R. 33 (Bankr. S.D.N.Y. 2015). In that opinion, Judge Drain held that Wells Fargo had failed to establish standing to foreclose on the debtor's mortgaged real property. *Id.* at 54–55. In so

---

[6] Because Ullah did not respond to Wells Fargo's Rule 56.1 statement, and because there is nothing in the record controverting this fact, the Court deems this fact admitted.

holding, he expressed suspicion with Wells Fargo's production, *after* the initiation of the action, of a note different from the note it presented when it commenced the action, and indorsed, for the first time, in blank.  He held that the evidence presented at an evidentiary hearing showed "a general willingness and practice on Wells Fargo's part to create documentary evidence, after-the-fact, when enforcing its claims," and that Wells Fargo had therefore not met its burden of establishing that the indorsement on the newly produced note was genuine.  *Id.* at 47.

This bankruptcy court decision does not raise a triable issue of fact as to the whether the indorsement at issue in this case is genuine.  Under New York's Uniform Commercial Code ("U.C.C."), a signature on a note is "presumed to be genuine or authorized," except in certain situations not applicable to this case.  *See* N.Y. U.C.C. § 3-307(1)(b).  New York's U.C.C. defines "presumed" as follows: "Whenever this act creates a 'presumption' with respect to a fact, or provides that a fact is 'presumed,' the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence."  N.Y. U.C.C. § 1-206.  Ullah's citation to an opinion in a different case involving Wells Fargo in which the court found that the presumption was rebutted[7] is not sufficient to raise a triable issue of fact that the indorsement here—an indorsement that, unlike the indorsement in that case, was presented at the beginning of this action (*see* Dkt. No. 1, Ex. A, at 5)—is not authentic.

Fifth, Ullah states that Wells Fargo "brings this case on behalf of a trust that was closed long [before][8] it purportedly received [Ullah's] mortgage and note."  (MTD at 2-3.)  She argues that the assignment of the Note and Mortgage to the Trust after the Trust closed violates the rules

---

[7] The bankruptcy court decision dealt with the Texas U.C.C., not the New York U.C.C., but the relevant provisions are the same.

[8] Ullah says the trust was closed "long after" it received the mortgage and note.  (MTD at 3.)  It is clear from the context of her statement, however, that this is an error and that she intended to write "long before."

of the Pooling and Service Agreement ("PSA"), and that, for this reason, "the trust does not actually have ownership interest in the note and mortgage." (*Id.*; *see also* Ullah Reply at 2-3.) Ullah, who is neither a party to nor an intended beneficiary of the PSA,[9] does not have standing to raise this argument as an affirmative defense. *See Rajamin v. Deutsche Bank Nat. Trust Co.*, No. 10 Civ. 7531 (LTS), 2013 WL 1285160, at *3 (S.D.N.Y. Mar. 28, 2013) (agreeing with "[t]he weight of caselaw throughout the country," which "holds that a non-party to a PSA lacks standing to assert noncompliance with the PSA as a claim or defense unless the non-party is an intended (not merely incidental) third party beneficiary of the PSA"), *aff'd*, 757 F.3d 79 (2d Cir. 2014).

Moreover, even if Ullah had standing to make such an argument, it would fail, as Wells Fargo does not base its standing to bring this action on a written assignment of the Note and Mortgage to the Trust. Rather, it asserts standing based on the fact that it is in physical possession of the Note, indorsed in blank. As stated above, such physical possession is sufficient to confer standing on Wells Fargo, and any deficiency in the written assignment of Ullah's Note and Mortgage to the Trust cannot deprive Wells Fargo of standing.

In sum, there is no genuine issue of material fact as to whether Wells Fargo has standing to bring this foreclosure action, and therefore Ullah's first affirmative defense is dismissed. The Court also dismisses Ullah's counterclaim, which alleges that "all interest [must] be tolled on the present mortgage because no party has come forward with valid proof that they can and do possess the note" (Answer ¶ 30), as Wells Fargo has indeed come forward with such proof.

      **b.**      **Service of Process**

---

[9] The Court deems admitted Wells Fargo's uncontroverted assertion that Ullah "is not a party to the PSA, nor is she an intended beneficiary of the PSA." (Pl. Rule 56.1 Statement ¶ 17.) Moreover, Ullah concedes that she "has not claimed to be a party to the PSA." (Ullah Reply at 3.)

Ullah's next affirmative defense is that the *initial* complaint was not sufficiently served. (Answer ¶¶ 25-28 & Ex. 1, at 3-4.)[10] The argument fails. A complaint is superseded by an amended complaint when the latter is properly served. *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668-69 (2d Cir. 1977). Ullah does not contend that there is any insufficiency with regard to the service of the amended complaint; nor could she, as it was served on her attorney on June 20, 2014 via the Electronic Case Filing ("ECF") system, pursuant to Federal Rule of Civil Procedure 5(a)(1)(B), (b)(2)(E) and Local Civil Rule 5.2. (Dkt. No. 39.) Therefore, the initial complaint has been superseded by the amended complaint in this action, and any inadequacy with respect to the service of the former is moot. Ullah's second affirmative defense is dismissed.

### c. Service of the Foreclosure Notice

Ullah's final affirmative defense is that she was not served the 90-day foreclosure notice, as required by section 1304 of the New York Real Property Actions and Proceedings Law ("RPAPL"). That section provides, in relevant part, that "at least ninety days before a lender, an assignee, or a mortgage loan servicer commences legal action against the borrower, including mortgage foreclosure, [that entity] shall give notice to the borrower" of the debt owed and amounts due to cure the default. RPAPL § 1304(1). It further provides that such notice must be given in a specific form:

> Such notice shall be sent . . . by registered or certified mail and also by first-class mail to the last known address of the borrower, and if different, to the residence that is the subject of the mortgage. . . . Notice is considered given as of the date it is mailed.

RPAPL § 1304(2). "[P]roper service of RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action . . . ." *Aurora Loan Servs.,*

---

[10] Ullah made this same argument in her motion to dismiss the initial complaint. (*See* Dkt. No. 24, at 5.) The Court did not rule on it because it dismissed the complaint for lack of standing. *Wells Fargo Bank, N.A. v. Ullah*, No. 13 Civ. 485 (JPO), 2014 WL 470883, at *5 (S.D.N.Y. Feb. 6, 2014).

*LLC v. Weisblum*, 85 A.D.3d 95, 106 (N.Y. App. Div. 2d Dep't 2011.)  The plaintiff has the burden of establishing that it satisfied this condition.  *Id.*

In meeting this burden, the plaintiff benefits from the longstanding doctrine of presumption of regularity: a letter or notice that is mailed is presumed to be received by the addressee.  *See Kearney v. Kearney*, 42 Misc. 3d 360, 369 (N.Y. Sup. Ct., Monroe Cnty. 2013) (citing, *inter alia*, *News Syndicate Co. v. Gatti Paper Stock Corp.*, 256 N.Y. 211 (1931)).  New York courts have held that "[i]n order to trigger the presumption of mailing, the lender under RPAPL 1304 must provide a sworn statement that the particular document—the statutory notice—was mailed by a particular person, or that a particular process, which resulted in mailing, was uniformly and diligently followed."  *Id.*; *see also Aurora Loan Servs.*, 85 A.D. at 106; *TD Bank, N.A. v. Leroy*, 121 A.D.3d 1256, 1258 (N.Y. App. Div. 3d Dep't 2014).  "If that proof is established, the burden shifts to the borrower," and "the final legal truism prevails: once the presumption of proper service has been established, mere denial of receipt is insufficient to rebut the presumption."  *Kearney*, 42 Misc. 3d at 370 (citing, *inter alia*, *Matter of ATM One v. Landaverde*, 2 N.Y.3d 472, 478 (2004))

Applying these principles here, the Court concludes that Wells Fargo has established that it satisfied the requirements of service under RPAPL § 1304.  It has submitted a sworn affidavit by the assistant secretary of its loan servicer, Rushmore Loan Management Services, LLC ("Rushmore").  (Dkt. No. 73 ("Bennett Aff. 2").)  That affidavit avers that Rushmore maintains an electronic "loan file" for each loan that it manages, and that it has a file for Ullah's loan.  (*Id.* ¶ 9.)  According to the affidavit, when Rushmore mails a 90-day foreclosure notice, Rushmore's computer system "contemporaneously" "generate[s]" a copy of that notice, which it archives in the computer system.  (*Id.* ¶¶ 7-8.)  When the 90-day notice is mailed and archived, it is also Rushmore's custom and practice to note, in the corresponding loan file, that the notice was mailed.  (*Id.* ¶ 9.)  Rushmore has submitted the notice that was generated by its computer system

15

for Ullah, along with a print-out of the notations made to Ullah's loan file, which indicate that a 90-day foreclosure notice was mailed to Ullah on October 9, 2012. (*Id.* ¶ 9 & Ex. B.)

This description of Rushmore's process for mailing 90-day notices and for recording such mailing, along with a record showing that the process was followed in this case, creates a presumption that the two notices that Wells Fargo asserts were sent here—one by certified mail and the other by regular first-class mail—were received. (*See id.* ¶ 4.) Although Ullah has successfully rebutted the presumption that the 90-day notice sent by certified mail was received, by submitting a tracking receipt showing that it was not delivered to her address (*see* Ullah Aff. Ex. 2), her assertion that she did not receive the 90-day notice sent by regular first-class mail is insufficient to rebut the presumption that that notice was received.[11] Wells Fargo has therefore satisfied its burden of establishing that Ullah was served with the 90-day foreclosure notice as required by RPAPL § 1304. Ullah's third affirmative defense is dismissed.[12]

### 3. Remaining Defendants

---

[11] Ullah seems to allege that she did not receive the notice sent by regular mail because her building had withheld certain privileges due to her failure to pay condominium dues. (Ullah Aff. at 2-3; Ullah Aff. 2, at 11.) This allegation is directly contradicted by the document she submits to support it. The document—a notice to Ullah that she has lost certain privileges for failing to pay dues—states that although other services would cease, the concierge would continue to accept "US postal service packages" on her behalf. (*See* Ullah Aff. Ex. 1, at 2.)

[12] Ullah also contends that she did not receive the "Help for Homeowners in Foreclosure" notice required by RPAPL § 1303. (Ullah Aff. 2, at 10.) As with the 90-day notice, she alleges that this notice was never given to her because her condominium building withheld certain privileges. As already noted, however, these withheld privileges did not include receiving mail through the United States Postal Service. Accordingly, Ullah has failed to rebut the presumption of receipt created by the affidavit of service. (*See* Komor Decl. Ex. 2 (Affidavit of Service for Help for Homeowners in Foreclosure notice).)

Finally, Ullah alleges that she did not receive the 30-day notice of foreclosure required under the Note and Mortgage. (Ullah Aff. at 2-4.) The Note and Mortgage, however, expressly provide that Ullah must be given notice of foreclosure *at least* 30 days prior to such action. (*See* Am. Compl. Exs. A, at 3 ("Borrower's Failure to Pay as Requested"); *id.* Ex. B, at 14-15 ("Lender's Rights if Borrower Fails to Keep Promises and Agreements").) Accordingly, any failure on Wells Fargo's part to serve the 30-day notice is cured by proper service of the 90-day notice.

In addition to Defendant Ullah, Wells Fargo names thirteen other parties as defendants in this action: Asset Acceptance LLC, the Internal Revenue Service ("the IRS"), the Board of Managers of the Columbia Condominium ("the Board"), and unidentified defendants "John Does" 1 through 10, "the persons or parties being the tenants, occupants, persons, corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint." Wells Fargo seeks a determination that these thirteen defendants "be forever barred and foreclosed from all right, title, claim, lien or other interest in the Mortgaged Property." (Am. Compl. at 7.)

Wells Fargo has requested, in its motion for summary judgment, that the Court "grant default judgment" against "the non-appearing defendants."[13] (Dkt. No. 56 ("MSJ"), at 1.) Because Wells Fargo has failed to comply with the Court's procedures for default judgment, *see* Judge J. Paul Oetken, Individual Practices in Civil Cases, *available at* http://www.nysd.uscourts.gov/cases/show.php?db=judge_info&id=1147, the motion for default judgment is denied without prejudice. The Court grants, however, Wells Fargo's request that "John Doe 1" be replaced with "Zahid Ullah," and that the nine remaining "John Doe" defendants be dismissed from this action.[14]

## IV. Conclusion

For the foregoing reasons, it is hereby:

---

[13] Asset Acceptance LLC has not entered an appearance. The IRS and the Board have entered appearances, but have otherwise not responded. (Dkt. Nos. 6, 26.) It is unclear whether Wells Fargo seeks default judgment against just Asset Acceptance LLC, or all three parties.

[14] If Wells Fargo intends to seek default judgment against Zahid Ullah, it must comply with the Court's Individual Practices in Civil Cases.

17

ORDERED, that Ullah's motion to dismiss the amended complaint is DENIED, Wells Fargo's motion for summary judgment is GRANTED, and Ullah's counterclaim and three affirmative defenses are dismissed, and it is further

ORDERED, that Wells Fargo shall submit, by June 26, 2015, a proposed judgment of foreclosure, which shall state the amount of the judgment, including, but not limited to, principal and interest on the note, costs, and attorney's fees associated with the action, and it is further

ORDERED, that Wells Fargo's request for the appointment of a receiver to sell the mortgaged property at 275 West 96th Street, Unit 25 E, New York, New York 10025, is GRANTED, *see* N.Y. C.P.L.R. § 5228 ("Upon motion of a judgment creditor, . . . the court may appoint a receiver who may be authorized to administer, collect, improve, lease, repair or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment."), and it is further

ORDERED, that, on or before June 26, 2015, Wells Fargo shall submit a proposed fee schedule for the Receiver, along with a letter explaining the basis for the proposed fee schedule, as well as the names, addresses, and telephone numbers of three individuals who are qualified and willing to act as the Receiver for the purpose of selling the Property, and it is further

ORDERED, that if there is no deficiency after the sale of the property, then this case will be closed, but this Court will retain jurisdiction over this matter in the event that there is a deficiency after the sale of the property, *see Regency Sav. Bank*, 139 F. Supp. 2d at 469; RPAPL § 1371 (allowing for a deficiency judgment where proceeds from foreclosure do not satisfy the debt), and it is further

ORDERED, that Defendant "John Doe 1" shall be replaced by "Zahid Ullah," and Defendants John Does 2 through 10 are dismissed from this action.

The Clerk of Court is directed to close the motions at Docket Numbers 45 and 52.

Dated: June 15, 2015
      New York, New York

_____
J. PAUL OETKEN
United States District Judge